**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CORRECT CRAFT IP HOLDINGS, LLC,**

      **Plaintiff,**

-vs-                                            **Case No. 6:09-cv-813-Orl-28KRS**

**MALIBU BOATS, LLC, DANMARK INTERNATIONAL, INC.,**

      **Defendants.**

_____

**ORDER**

This case comes before the Court on the following:

1. Motion to Dismiss Counterclaim by Correct Craft IP Holdings, LLC and Correct Craft, Inc. (Doc. 37); and

2. Opposition to Counter Defendants' Motion to Dismiss Counterclaim and Request for Oral Hearing by Malibu Boats, LLC and Danmark International, Inc. (Doc. 43).

I. Background

On May 13, 2009, Plaintiff Correct Craft IP Holdings, LLC ("Correct Craft") filed the instant suit alleging that Defendants Malibu Boats, LLC and Danmark International, LLC (collectively "Malibu") infringed six patents relating to water sport towing.[1] (Doc. 1). On August 6, 2009, Malibu filed an Answer and Counterclaims asserting that the contested patents were unenforceable due to Correct Craft's inequitable conduct before the United

---

[1]The patents alleged to be infringed in the original Complaint include: U.S. Patent Nos. RE37,823 ("the '823 patent"); 6,666,159 ("the '159 patent"); 6,044,788 ("the '788 patent"); 6,192,819 ("the '819 patent"); 6,374,762 ("the '762 patent"); and 7,299,761 ("the '761 patent") (collectively "Patents-In-Suit").

States Patent and Trademark Office ("PTO"). (Doc. 31). Malibu subsequently filed an Amended Answer and Counterclaims containing additional factual allegations in support of the inequitable conduct counterclaim. (Doc. 36).

Correct Craft filed the present Motion to Dismiss Malibu's Counterclaims. (Doc. 37). Correct Craft alleges that: (1) Count XIII fails to meet the pleading requirements for inequitable conduct set forth in Exergen Corp. v. Wal-Mart Stores, 575 F.3d 1312 (Fed. Cir. 2009); (2) the Complaint is improperly formatted as a shotgun pleading; (3) Counts XV and XVI should be dismissed for failure to allege actual fraud on the PTO, and (4) Count XIV fails to state a claim under 35 U.S.C. § 285. (Doc. 37). In response, Malibu maintains that: (1) the Amended Complaint sets forth sufficient factual allegations to satisfy the pleading requirements for inequitable conduct; (2) Counts XV and XVI allege sufficient facts to establish fraud under Section 2 of the Sherman Act; (3) the Federal Circuit has held that it is not improper to assert an attorney's fees count in a counterclaim under 35 U.S.C. § 285; and (4) the pleadings are properly formatted. (Doc. 43).

## II. Standard of Review

When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 323 (2007); GSW, Inc. v. Long County, Ga., 999 F.2d 1508, 1510 (11th Cir. 1993). In determining the merits of the motion, a court must "accept all factual allegations in the complaint as true." Tellabs, Inc.,

551 U.S. at 323. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state a claim to relief that is plausible on its face.'" Id. at 1949-50 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949 (citing Twombly, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950 (citation omitted). As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Id. at 1949 (quotation marks and internal citations omitted) (quoting Twombly, 550 U.S. at 557). On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. Id. at 1950-51.

III. Analysis

1. Count XIII - Inequitable Conduct

Inequitable conduct occurs when an individual associated with the filing and prosecution of a patent application makes an affirmative misrepresentation of a material fact, fails to disclose material information, or submits false material information, with the specific intent to deceive the PTO. See Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1365 (Fed. Cir. 2008); 37 C.F.R. § 1.56 (2009). While inequitable conduct is a "broader concept than common law fraud, it must [still] be pled with particularity" under Federal Rule of Civil Procedure 9(b).[2] Ferguson Beauregard/Logic Controls v. Mega Sys., LLC, 350 F.3d 1327, 1344 (Fed. Cir. 2003). This particularity requirement is intended to "alert[] defendants to the precise misconduct with which they are charged and protect[] defendants against spurious charges of immoral or fraudulent behavior." Durham v. Bus. Mgmt. Assoc., 847 F.2d 1505, 1511 (11th Cir. 1988) (citing Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d. Cir. 1984)). "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual basis for the allegation, does not satisfy Rule 9(b)." Exergen, 575 F.3d at 1326-27.

Recently, the Federal Circuit clarified the pleading requirements for inequitable conduct in patent cases, finding that the in order to "plead the circumstances of inequitable conduct with the requisite particularity under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed

---

[2]Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

before the PTO." Id. at 1327. In addition, a pleading of inequitable conduct must include sufficient allegations of underlying facts from which a court may reasonably infer[3] that a specific individual "(1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." Id. at 1328-29.

In the present case, Correct Craft maintains that Count XIII fails to meet the pleading requirements for inequitable conduct set forth in Exergen. (Doc. 37). Specifically, Correct Craft alleges that the factual allegations fail to identify the specific who, what, when, where, and how of the material misrepresentations or omissions that were allegedly committed before the PTO and additionally fails to permit the Court to make reasonable inferences regarding the requisite state of mind. Id. In response, Malibu avers that the factual allegations are sufficient to meet the pleading requirements set forth in Exergen. (Doc. 43).

### a. Failure to Disclose Dukane Prior Art[4]

Only those individuals associated with the filing and prosecution of a patent application have a duty to disclose information to the PTO that is material to the patentability of their claims. 37 C.F.R. § 1.56(c).[5] Therefore, in order to state a claim for inequitable

---

[3]A reasonable inference is the "the single most reasonable inference" able to be drawn from the alleged fact. Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1365 (Fed. Cir. 2008).

[4]While Malibu alleges a single count of inequitable conduct, Count XIII, the allegations referenced in Count XIII present eight distinct factual scenarios allegedly giving rise to separate instances of inequitable conduct. (Doc. 36). Accordingly, the Court will address the sufficiency of each factual scenario individually.

[5]Pursuant to 37 C.F.R. § 1.56(c), individuals associated with the filing or prosecution of a patent include:

conduct, a pleading must "name the specific individual associated with the filing or prosecution of the application . . . who both knew of the material information and deliberately withheld or misrepresented it." Exergen, 575 F.3d at 1329.  In Exergen, the Federal Circuit found a pleading referring to "Exergen, its agents and/or attorneys" insufficient to meet the "who" requirement of the material omission and misrepresentation.  Id. (citing 37 C.F.R. § 1.56(a)); see also Power Integrations, Inc., v. Fairchild Semiconductor Int'l, Inc., No. 08-309-JJF-LPS, 2009 WL 4928024, at *3 (D. Del. Dec. 18, 2009) (finding that pleadings alleging the specific inventor and patent agent involved in the inequitable conduct were sufficient to establish the "who" requirement); Konami Digital Entm't v. Harmoniz Music Sys., Inc., No. 6:08cv286-JDL, 2009 WL 5061812, at *2 (E.D. Tex. Dec. 14, 2009) (holding that the pleadings met the "who" requirement where they identified particular patent prosecution attorneys and inventors); HTC Corp. v. IPCOM GMBH & Co., No. 08-1897 (RMC), 2009 WL 4363206, at *5 (D.D.C. Dec. 3, 2009) (finding the "who" requirement met where the pleading accused certain named inventors of inequitable conduct).

In the present case, Malibu alleges that "Correct Craft Prosecutors" had knowledge of Mr. Dukane's activities and failed to disclose them to the PTO.  (Doc. 36 ¶¶ 20-36). Malibu fails, however, to name a specific prosecutor(s) associated with the filing or prosecution of the application who both knew the material information and deliberately withheld or misrepresented it.  Thus, Malibu fails to sufficiently allege the "who" requirement.

---

(1) Each inventor named in the application;
(2) Each attorney or agent who prepares or prosecutes the application; and
(3) Every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or anyone to whom there is an obligation to assign the application.

(Doc. 36 ¶¶ 31-32, 34-36). Accordingly, Count XIII fails to state a claim for inequitable conduct to the extent it alleges that "Correct Craft Prosecutors" failed to disclose the Dukane prior art.

### b. Failure to Disclose Evidence from Protest

The pleadings allege that Correct Craft Prosecutors submitted prior art to the PTO during the reexamination of the '823 patent but failed to disclose this same relevant prior art during the prosecution of the '819, '726, '159, and '761 patents. (Id. ¶¶ 37-41). The requisite deceptive intent is plead solely on information and belief. (Id. ¶ 40).

Pleading deceptive intent on information and belief is permitted under Rule 9(b) when essential information lies uniquely within another party's control, "but only if the pleading sets forth the specific facts upon which the belief is reasonably based." Exergen, 575 F.3d at 1330-31. Here, Malibu's pleadings provide "neither the information on which it relies or any plausible reasons for the belief." Id. at 1331. Furthermore, the circumstances alleged, even if true, do not plausibly suggest a "deliberate decision to withhold a known material reference or to make a knowingly false misrepresentation-a necessary predicate for inferring deceptive intent." Id. This is particularly true in light of Exergen, wherein the Federal Circuit stated that "the mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application, is insufficient to meet the threshold level of deceptive intent required to support an allegation of inequitable conduct." Id. The pleadings in the present case attempt to allege deceptive intent under a similar factual scenario, mainly that prior art submitted during the prosecution of the '823 patent was not disclosed during the prosecution of other related patents. (Doc. 36 ¶¶ 37-38, 40).

Providing no further allegations of underlying facts from which the Court may reasonably infer deceptive intent, the Court finds that Malibu fails to sufficiently allege the requisite mental state. In addition, the pleadings fail to allege specific facts to show that the *individual* who previously cited the prior art references knew of the specific information alleged to be material and deliberately withheld it from the relevant examiner. Instead, the pleadings again refer generally to "Correct Cross Prosecutors," and therefore fail to meet not only the deceptive intent element, but also the "who" requirement set forth in Exergen. See supra Part III.1.a. Accordingly, Count XIII fails to state a claim for inequitable conduct to the extent it alleges a failure to disclose evidence from the Protest.[6]

c. Submission of Misleading Arguments and Declarations in Response to Protest

The pleadings next allege that in an attempt to discredit evidence before the PTO, "Correct Craft Prosecutors" submitted various false and misleading arguments and affidavits. (Doc. 36 ¶¶ 42-53). Once again, Malibu fails to name a specific prosecutor(s) associated with the filing or prosecution of the application who both knew the material information and deliberately withheld or misrepresented it. See supra Part III.1.a. Accordingly, Count XIII fails to state a claim for inequitable conduct to the extent it alleges the "Correct Craft

---

[6] In Paragraph 40, Malibu recites a conclusory allegation that Correct Craft prosecutors "failed to disclose to the Patent Office myriad other documentary and video evidence from the Protest during its later prosecution of the '819, '762, '159, and 761 patents, despite the materiality of that evidence to those patents." (Doc. 36 ¶ 40). This allegation of inequitable conduct is unsupported by the alleged facts, which fail to identify which claims and which limitations in those claims the withheld references are relevant to, and where in those references the material information is found. See Exergen, 575 F.3d at 1329-30. As such, Paragraph 40 fails to meet the "who, what, and where" requirements and Count XIII will be dismissed to the extent it relies on this paragraph.

-8-

Prosecutors" made misleading arguments and declarations to the PTO in response to the Protest evidence.

### d. Failure to Disclose Early Commercial Activities and Unrestricted Distributions of Wakeboard Tower Drawings

Malibu contends that "Correct Craft Prosecutors" failed to disclose early commercial activities and the unrestricted distribution of wakeboard tower drawings. (Doc. 36 ¶¶ 54-59). While these assertions allege more specifically that Herb Allen had knowledge of the information in question, they fail to allege that Herb Allen knowingly withheld the information from the PTO with the intent to deceive. (Id. at 56). Instead, the pleadings again allege generally that "Correct Craft Prosecutors" perpetrated fraud on the PTO. Id. Thus, the Amended Complaint fails to name a specific prosecutor(s) associated with the filing or prosecution of the application who both knew the material information and deliberately withheld or misrepresented it. See supra Part III.1.a. Accordingly, Count XIII fails to state a claim for inequitable conduct to the extent it alleges that "Correct Craft Prosecutors" failed to disclose early commercial activities and unrestricted distributions of wakeboard tower drawings.

### e. Infectious Unenforceability Due to Todd's Failure to Disclose Larson Drawing and Early Sale

The Amended Complaint alleges that the Patents-In-Suit are rendered unenforceable as a result of Mr. Todd's inequitable conduct during the prosecution of the '972 design patent. (Doc. 36 ¶¶ 60-62). Malibu asserts that Mr. Todd engaged in inequitable conduct by failing to disclose the Larson drawings and notes allegedly sent to Mr. Todd more than one year before the filing of the '972 design patent, relevant prior art under 35 U.S.C. § 102.

(Id. ¶ 60). Malibu also maintains that Mr. Todd engaged in inequitable conduct by failing to disclose his sale of a wakeboard tower to Correct Craft more than one year before the filing date of the application for the '972 design patent, creating a bar to patentability under 35 U.S.C. § 102(b). (Id. ¶ 61). Malibu contends that each of the Patents-In-Suit are thereby rendered unenforceable under the doctrine of infectious unenforceability. (Id. ¶ 62).

In order for a court to render related patents unenforceable under the doctrine of infectious unenforceability, a party must allege that the inequitable conduct in the prosecution of one patent had "immediate and necessary relation" to the enforcement of the related patents. Consolidated Aluminum Corp. v. Foseco Int'l Ltd., 910 F.2d 804, 810-11 (Fed. Cir. 1990). Thus, a court must "find inequitable conduct sufficient to hold at least one patent unenforceable before considering whether to hold an entire group of related patents unenforceable." Speedplay, Inc. v. Bebop, Inc., 211 F.3d 1245, 1259 (Fed. Cir. 2000).

Because Malibu fails state a claim for inequitable conduct in the prosecution of the '972 design patent, the doctrine of infectious unenforceability does not apply to the Patents-In-Suit. In order to state a claim for inequitable conduct, a party must identify the specific "what, where, and how of the material misrepresentation or omission committed before the PTO." Exergen, 575 F.3d at 1327. Here, Malibu fails to identify which aspects of the '972 design patent the drawings, notes, and early sale of the wakeboard tower are relevant to, the "what and the where of the material omissions." Id. at 1329. Malibu also fails to identify the particular aspects of the drawings, notes, and early sale of the wakeboard tower that are supposedly absent from the information of record. Id. at 1330. "Such allegations are necessary to explain both 'why' the withheld information is material and not cumulative, and

'how' an examiner would have used this information in assessing the patentability" of the design. Id. at 1329-30. In addition, Malibu fails to allege, even in a conclusory fashion, the requisite deceptive intent with regards to the disclosure of the Larson drawings and notes, and with regards to the disclose of the wakeboard tower, alleges only that "Mr. Todd, having an intent to deceive, did not disclose the sale to the Patent Office . . . ." (Doc. 36 ¶¶ 60-61). Such pleadings, even if true, do not "plausibly suggest any deliberate decision to withhold a known material reference, or to make a knowingly false misrepresentation" to the PTO. Exergen, 575 F.3d at 1331. Accordingly, Count XIII fails to state a claim for inequitable conduct to the extent it alleges infectious unenforceability due to Todd's failures to disclose the Larson drawings and notes as well as the early sale of the wakeboard tower.

### f. Submission of False Declarations of Inventorship

Malibu next alleges that "Correct Craft Prosecutors" fraudulently added Mr. Todd as an inventor by submitting declarations to the Patent Office that the Correct Craft Prosecutors knew or believed to be false. (Doc. 36 ¶¶ 63-70). As discussed previously, generally alleging that "Correct Craft Prosecutors" engaged in inequitable conduct is insufficient to support a claim for inequitable conduct. See supra Part III.1.a. Thus, Count XIII fails to state a claim for inequitable conduct to the extent it alleges "Correct Craft Prosecutors" submitted false declarations of inventorship to the PTO.

In addition to alleging that "Correct Craft Prosecutors" submitted false declarations of inventorship, Malibu also alleges that Mr. Todd and Mr. Larson, two of the named inventors listed on both the '350 patent and the '823 reissue, also submitted false declarations of inventorship to the PTO. Pursuant to 37 C.F.R. § 1.56(c), each named

inventor has a duty of candor to the PTO. (Doc. 36 ¶¶ 67-68). Thus, Malibu's allegations that two specifically named inventors engaged in fraud before the PTO are sufficient to satisfy the "who" requirement under Exergen. See Lincoln Nat'l Life v. Transamerica Fin. Life Ins. Co., No. 1:08-CV-135, 2009 WL 4547131, at *2 (N.D. Ind. Nov. 25, 2009) (finding that pleadings alleging that plaintiff's lead prosecution counsel and a named inventor were aware of the references yet deliberately withheld them from the PTO were sufficient to meet the "who" requirement). The pleadings also satisfy the "what, where, and how" requirements by alleging that both Todd and Larson submitted false declarations of joint inventorship to the PTO. *See* 35 U.S.C. § 116 (requiring joint inventors to apply for a patent jointly and submit the required oath of inventorship). Finally, Malibu makes specific factual allegations regarding a dispute in inventorship and an agreement attempting to resolve this dispute. (Doc. 36 ¶¶ 64-66). Malibu also cites deposition testimony of both Todd and Larson, taken after the filing of the '350 patent, wherein each contests the validity of their own joint inventorship declarations. (Id. ¶¶ 67-68). Malibu therefore alleges sufficient facts from which the Court may reasonably infer that both Todd and Larson knew of the falsity of the joint inventorship declarations and knowingly withheld this information with a specific intent to deceive the PTO. See Exergen, 575 F.3d at 1329. Accordingly, the Court declines to dismiss Count XIII to the extent it alleges that Mr. Todd and Mr. Larson submitted false declarations of joint inventorship to the PTO.

### g. Failure to Disclose Litigation Documents

The pleadings next allege that "Correct Craft Prosecutors" engaged in inequitable conduct where they failed to disclose relevant litigation documents to the PTO. (Doc. 36 ¶

71-74). Once again, Malibu fails to name a specific prosecutor(s) associated with the filing or prosecution of the application who both knew the material information and deliberately withheld or misrepresented it. See supra Part III.1.a. Furthermore, Malibu entirely fails to "identify which claims and which limitations in those claims the [withheld litigation documents] are relevant to and where in those documents the material information is found." Exergen, 575 F.3d at 1329. Accordingly, Count XIII fails to state a claim for inequitable conduct to the extent it alleges a failure to disclose litigation documents.

### h. Improper Payment of Small Entity Fees

Malibu maintains that "Correct Craft Prosecutors" engaged in inequitable conduct by improperly representing themselves to be a "small entity" for patent application purposes. (Doc. 36 ¶¶ 75-79). However, Malibu fails to name a specific prosecutor(s) associated with the filing or prosecution of the application who both knew the material information and deliberately withheld or misrepresented it. See supra Part III.1.a. Accordingly, Count XIII fails to state a claim for inequitable conduct to the extent it alleges "Correct Craft Prosecutors" improperly represented themselves to be a small entity for patent application purposes.

### 2. Count XV - Violation of Federal Antitrust Laws

In Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172 (1965), the Supreme Court held that the "enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements to a § 2 case are present. Id. at 174. In such an event, the treble damage provision of § 4 of the Clayton Act would be available to an injured party." Id. at 177; Dippin' Dots, Inc. v.

Mosey, 476 F.3d 1337, 1346 (Fed. Cir. 2007). Thus, where a patentee has obtained a patent by knowingly and willfully misrepresenting a fact to the PTO," the patentee is striped of its exemption from the antitrust laws." Walker Process, 382 U.S. at 178.

The first barrier for a Walker Process claimant to clear is the requirement that the patent be obtained through actual fraud upon the PTO.[7] Walker Process, 382 U.S. at 178. Under Federal Circuit law, "[a] finding of inequitable conduct does not by itself suffice to support a finding of Walker Process fraud because inequitable conduct is a broader, more inclusive concept than common law fraud needed to support a Walker Process counterclaim." Dippin' Dots, 476 F.3d at 1346 (citing Nobelpharma AB v. Implant Innovations, Inc., 141 F.3d 1059, 1069 (Fed. Cir. 1998)). In order to establish Walker Process fraud, a claimant must allege a greater degree of materiality and intent than are required to state a claim for inequitable conduct. Dippin' Dots, 467 F.3d at 1347. A plaintiff must allege that a patentee obtained a patent: (1) by knowingly and willfully misrepresenting facts to the PTO; (2) with independent and clear evidence of an intent to deceive; and (3) that the patent would not have issued but for the misrepresentation or omission. Nobelpharma, 141 F.3d at 1069-72.

Malibu alleges sufficient facts in the surviving inequitable conduct claim, discussed *supra* Part III.1.f, to satisfy the first two requirements of a Walker Process fraud claim. First, Malibu alleges that both Todd and Larson knowingly submitted false declarations of joint inventorship in order to resolve an inventorship dispute and permit the '350 patent to claim

---

[7]The standard for actual fraud upon the PTO is governed by Federal Circuit law. Nobelpharma,141 F.3d at 1068 (*en banc* in relevant part).

priority to the '972 design patent. (Doc. 36 ¶ 66). Second, Malibu alleges the existence of clear, independent evidence of both Todd and Larson's intent to deceive in the form of deposition and court testimony. (Id. ¶ 68). However, Malibu fails to allege the third element of a Walker Process fraud claim, that "the patent would not have issued *but for* the patent examiner's justifiable reliance on the [false declarations of inventorship]." Dippin' Dots, 476 F.3d at 1347. Malibu does not specifically allege that the priority date of the '972 patent allowed Malibu to overcome particular prior art that would have prevented the issuance of the '350 patent, nor does Malibu allege that the joint inventorship of the '350 patent, if indeed incorrect, would invalidate the patent under 35 U.S.C. § 102(f). See 35 U.S.C. §§ 116, 256 (provisions for correcting inventorship). Thus, the pleadings are insufficient to meet the heightened threshold of materiality and intent required to state a Walker Process claim under § 2 of the Sherman Act. Accordingly, Count XV will be dismissed.

### 3. Count XVI - Florida Antitrust Laws

In Count XVI, Malibu asserts that Correct Craft violated Chapter 452 of the Florida Statutes by attempting to obtain and maintain market power in the relevant markets through threatened and actual enforcement of fraudulently procured patents. (Doc. 36 ¶ 153). The Florida Antitrust Statutes, Fla. Stat. chs. 542.18 and 542.19, closely track the language of the Sherman Act and are analyzed under the same rules and case law.[8] See Andrx, 421 F.3d at 1233 (citing All Care Nursing Serv. v. High Tech Staffing Servs., Inc., 135 F.3d 740, 745 n.11 (11th Cir. 1998)). Accordingly, the preceding analysis of federal antitrust law in

---

[8]Florida Statutes Chapter 542.32 states that "[i]t is the intent of the Legislature that, in construing this chapter, due consideration and great weight be given to he interpretations of the federal courts relating to comparable federal antitrust statutes."

-15-

Count XV applies with equal force to the Florida statutory provisions alleged in Count XVI. Count XVI will therefore be dismissed for failure to sufficiently allege Walker Process fraud.

### 4. Count XIV - Attorney's Fees Pursuant to 35 U.S.C. § 285

In Count XIV, Malibu contends that Correct Craft should be ordered to pay Malibu reasonable attorney's fees and costs pursuant to 35 U.S.C. § 285.[9] (Doc. 36 ¶ 147). Correct Craft contends that Malibu improperly pleads Count XIV as a separate cause of action. (Doc. 37 at 19). Correct Craft does not cite, and the Court is unable to find, any case law in support of this proposition. Furthermore, the Federal Circuit has specifically held that it is not improper to present an attorney's fees count in a separate counterclaim requesting relief under § 285. H.R. Techs., Inc. v. Astenchnologies, Inc., 275 F.3d 1378, 1386 (Fed. Cir. 2002); see also Sepracor Inc. v. Dey, L.P., No. 06-113-JJF, 2008 WL 4377570, at *3 (D. Del Sept. 26, 2008) (finding an independent prayer for relief under § 285 proper where the complaint stated that the alleged infringement was willful and that plaintiff was therefore "entitled to reasonable attorneys' fees pursuant to 35 U.S.C. § 285."). Accordingly, Correct Craft's Motion to Dismiss Count XIV will be denied.

### 5. Pleading Format

At first glance, the Amended Complaint appears to be the proverbial shotgun pleading as each antecedent allegation is incorporated by reference into each subsequent claim for relief. In such cases, courts often dismiss the complaint, finding the "lack of connection between the substantive count and the factual predicates [to be] the central problem" with

---

[9]Pursuant to 35 U.S.C. § 285, a court may award attorney's fees and costs in exceptional cases.

the pleading format, particularly under the heightened pleading requirements of Rule 9(b). Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1279 (11th Cir. 2006). Here, however, Malibu's factual background section is divided into logical, coherent subsections whose facts are easily linked to the relevant claims. In addition, the antitrust and attorney's fees claims are based on the preceding allegations of inequitable conduct. Thus, the Amended Complaint does not constitute the type of shotgun pleading, that, if tolerated would harm the Court by impeding its ability to administer justice, and will not be dismissed in its entirety. Byrne v. Nezhat, 261 F.3d 1075, 1131 (11th Cir. 2001).

## IV. Conclusion

Based on the foregoing, the Motion to Dismiss Counterclaim by Correct Craft IP Holdings, LLC and Correct Craft, Inc. (Doc. 37) is **GRANTED in part** and **DENIED in part.**

1. The Motion to Dismiss Count XIII is **DENIED** to the extent the Amended Complaint alleges that Mr. Todd and Mr. Larson engaged in inequitable conduct by submitting false declarations of joint inventorship to the PTO. The Motion to Dismiss Count XIII is **GRANTED without prejudice** in all other respects.

2. The Motion to Dismiss Count XV and Count XVI is **GRANTED without prejudice**.

3. The Motion to Dismiss Count XIV is **DENIED**.

Malibu Boats, LLC and Danmark International, Inc. have leave to file a Second Amended Counterclaim that comports with this Order within fourteen (14) days from the date of this Order. If the Defendants fails to timely submit an Second Amended Counterclaim, this

action will proceed solely on the well-pled claims of the Amended Counterclaim.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 17th day of February, 2010.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party